UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MBA ENGINEERING, INC., as Sponsor and Administrator of the MBA ENGINEERING, INC. EMPLOYEES 401(K) PLAN and the MBA ENGINEERING, INC. CASH BALANCE PLAN, and CRAIG MEIDINGER, as Trustee of the MBA Engineering, Inc. Employees 401(k) Plan and the MBA Engineering, Inc. Cash Balance Plan, Individually and as representative of all others similarly situated, *Plaintiffs*, v. MSCS FINANCIAL SERVICES DIVISION OF BROADRIDGE BUSINESS PROCESS OUTSOURCING, LLC, MATRIX TRUST COMPANY, and MATRIX SETTLEMENT AND CLEARANCE SERVICES, LLC *Defendants.* | § § § § § § § § § § § § § § § § § § § § § § § § § | Case No: 3:22-cv-01221 |

---

## ORIGINAL CLASS ACTION COMPLAINT

---

TO THE HONORABLE JUDGE OF THIS COURT:

COMES NOW, Plaintiffs MBA Engineering, Inc. ("MBA"), as sponsor and administrator of the MBA Engineering, Inc. Employees 401(k) Plan (the "MBA Engineering, Inc. Retirement Plan") and the MBA Engineering, Inc. Cash Balance Plan (collectively, the "Plans"), the Plans in their own right, and Craig Meidinger ("Meidinger"), as the Plans' Trustee (MBA, the Plans, and Meidinger collectively as, "Plaintiffs"), and, who on their own behalf and on behalf of others

similarly situated, file this Original Class Action Complaint against Defendant MSCS Financial Services Division of Broadridge Business Process Outsourcing, LLC ("MSCS Financial"), Defendant Matrix Trust Company ("Matrix"), Defendant Matrix Settlement and Clearance Services, LLC ("MSCS," collectively with MSCS Financial, and Matrix, "Defendants") and would respectfully show the Court as follows:

## I.    <u>INTRODUCTION</u>

1.      This is a case for strict liability under the Employee Retirement Income Security Act of 1974 ("ERISA") and other sections of ERISA and state laws. Defendants unlawfully retained and transferred substantial amounts of monies from over 100,000 account holders ("Customers") through nondisclosure and concealment. Without discovery, Plaintiffs cannot accurately estimate the total amount of money that Defendants unlawfully retained and transferred, but the amounts likely total more than $40 million and could be as high as hundreds of millions.[1]

2.      As of this date, Defendants have retained and transferred, without satisfying strict disclosure obligations, three categories of monies: shareholder servicing fees, finders fees, and sub-administration fees (collectively, the "Mutual Fund Fees"). Defendants worked together to collect the Mutual Fund Fees, retain a portion of them, and transfer more than 90% of them to third parties in interest, e.g. third party administrators.

3.      Defendants' actions constitute multiple violations of ERISA as well as state laws for those putative class members which were not governed by ERISA.

---

[1] This Class Action is for claims Plaintiffs discovered in another case between the Parties after that case's claim joinder deadline, but prior to the expiration of discovery deadlines. Plaintiffs sought leave to join these claims in another class action after the claim joinder deadline, but that Court, the Hon. Ada Brown, denied leave on the basis that it would materially change the nature of that class action. *MBA Eng'g, Inc. v. Matrix Trust Co.*, Civil Action No. 3:20-cv-01915-E (N.D. Tex. filed July 21, 2020). Therefore, Plaintiffs bring this separate class action to ensure Defendants' are held accountable for all types of funds they have improperly handled.

## II.    <u>BACKGROUND INFORMATION</u>

4.      Defendants are a custodian and service providers who primarily serve employee benefit plans qualified under ERISA. As a custodian, they are a fiduciary under ERISA. *Total Plan Servs., Inc. v. Texas Retailers Ass'n, Inc.*, 925 F.2d 142, 143 (5th Cir. 1991) (citing 29 U.S.C. § 1002(14)(A) and holding "All plan administrators, officers, trustees, and custodians are fiduciaries for purposes of ERISA.").

5.      Custodians, like Defendants, are banks which take possession of Customer assets in exchange for a fee. Defendants experienced rapid growth over the last decade. For example, in just three years from 2014 to 2017, Defendants grew their business by more than 400% in Customer assets to almost $200 billion. Since their inception, Defendants neglected multiple regulatory requirements imposed by ERISA and the U.S. Department of Labor ("DOL") which impose strict liability.

6.      Under ERISA, Defendants are strictly liable for any "transaction, if [Defendants] know or should know that such transaction constitutes a direct or indirect. . . sale or exchange, or leasing, of any property between the plan and a party in interest. . . [or] transfer to, or use by or for the benefit of a party in interest, of any asset of the plan." 29 U.S.C. § 1106(a)(1) ("Prohibited Transactions"). Defendants' retention, and transfer of the Mutual Fund Fees to third parties impose strict liability as Prohibited Transactions.

7.      In addition to strict liability for the Prohibited Transactions, Defendants also cannot avail themselves of an applicable affirmative defense. For example, Defendants did not disclose that they were collecting, retaining, and transferring the Mutual Fund Fees to give rise to an affirmative defense under ERISA Section 408(b)(2). 29 U.S.C. § 1108(b)(2). These disclosure requirements and notices are commonly referred to by the underpinning ERISA Section as

"408(b)(2) Notices." These 408(b)(2) Notices pertain only to the affirmative defense to Defendants' strict ERISA liability.

8.      ERISA's Prohibited Transaction section is broad in keeping with ERISA's mandated purpose of "guaranteeing" that participants receive benefits they are entitled to. *Concrete Pipe & Prod. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 607 (1993) ("Congress wanted to guarantee that if a worker has been promised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit—he will actually receive it.").

9.      Every payment of compensation to a custodian or other service provider, like Defendants and third party administrators, falls within ERISA's Prohibited Transaction definition and would give rise to liability but for a separate exception mechanism. 77 Fed. Reg. 23, at 5632 (Feb. 3, 2012) (DOL summarizing this structure). Congress intended the Prohibited Transaction structure to be the default position after years of study and drafting; therefore, Congress fashioned an exception for compensation to service providers, like custodians, rather than defining such compensation out of ERISA's Prohibited Transactions. *Id.*

10.     For that reason, ERISA Section 408(b)(2) saves service provider compensation from the broad Prohibited Transaction definition so long as multiple requirements are met (detailed below). 29 U.S.C. 1108(b)(2) (exempting "Contracting or making reasonable arrangements with a party in interest for. . . services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefore."). 77 Fed. Reg. 23, at 5632 (Feb. 3, 2012).

11.     Defendants bear the burden of proving entitlement to a prohibited transaction exception. *E.g., Perez v. Bruister,* 823 F.3d 250, 265 (5th Cir. 2016) ("Defendants did not carry their burden to qualify for the ERISA § 408(e) adequate consideration affirmative defense, hence

the transactions between the ESOP and BFLLC were prohibited by ERISA § 406(a)(1)(A)"); *Donovan v. Cunningham*, 716 F.2d 1455, 1468 (5th Cir. 1983) ("As the Supreme Court has observed in a different context, it seems 'fair and reasonable' to place the burden of proof upon a party who seeks to bring his conduct within a statutory exception to a broad remedial scheme.").

### The Mutual Fund Fees

12.     The Mutual Fund Fees were amounts of money generated by investments owned by Defendants' Customers, the putative class members, in certain mutual funds. For example, one type, shareholder servicing fees, are based on a percentage of the total value of the total holdings of Defendants' Customers' holdings of the applicable mutual fund. Another type of the Mutual Fund Fees, finder's fees, is paid differently. Finder's fees are generated when a Customer buys an applicable mutual fund and are based on the purchase price of that purchase. Sub-administration fees, on the other hand, vary and are based on either a percentage like the shareholder servicing fees or a flat rate, depending on the applicable mutual fund.

### Defendants' Collection, Retention, and Transfer of Mutual Fund Fees

13.     Defendants each worked in a concerted manner to collect, retain, and transfer the Mutual Fund Fees.

14.     Matrix Trust contracted with third party administrators and putative class members to provide custodial services for many forms of assets, including mutual funds which generated the Mutual Fund Fees. Matrix Trust also contracted with MSCS Financial for MSCS Financial to collect the Mutual Fund Fees generated by the putative class member's mutual funds. MSCS Financial, however, did not enter into any contract with a third party administrator or putative class member.

15.     For its part, MSCS recorded and facilitated the flow of information between Matrix Trust and MSCS Financial. MSCS Financial took the lead role in collecting and handling the Mutual Fund Fees. On regular intervals, MSCS Financial reviewed information provided by MSCS concerning the quantity and values of applicable mutual funds in Matrix Trust's custody for the putative class members. MSCS Financial then prepared and sent statements to each mutual fund which paid the Mutual Fund Fees ("Mutual Fund Invoices"). Not all mutual funds paid Mutual Fund Fees. These Mutual Fund Invoices detailed the amount of Mutual Fund Fees MSCS Financial expected to collect for the applicable time period. MSCS Financial sent the Mutual Fund Invoices on regular intervals, e.g. monthly.

16.     After sending the Mutual Fund Invoices to the mutual fund companies, MSCS Financial used a separate bank account in its own name and control at JP Morgan Chase to receive the Mutual Fund Fees. No other party had any control over this account.

17.     After collecting the Mutual Fund Fees in its own separate account, MSCS Financial then exercised its control over the account to transfer a large majority of the Mutual Fund Fees. MSCS Financial transferred more than ninety (90) percent of the Mutual Fund Fees to a separate bank account held by Matrix Trust. No other person had any control over this account held by Matrix Trust. Matrix Trust then in turn transferred those amounts to other third parties in interest, third party administrators. Alternatively, due to possible inconsistent testimony, Plaintiffs allege MSCS Financial transferred more than ninety (90) percent of the Mutual Fund Fees to the third parties in interest, third party administrators, instead of Matrix Trust.

18.     MSCS Financial retained all the Mutual Fund fees it did not transfer as part of the greater than ninety (90) percent transferred to either Matrix Trust or third party administrators.

19.     Though unknown, MSCS Financial collected more than roughly $40 million of Mutual Fund Fees and up to roughly $400 million from 2014 to 2022. The specific amount is unknown and needs discovery and will be significantly larger for the funds that were received prior to 2014 based on Defendants concealment of these funds. Each of the Defendants, as closely knit entities, benefited from the illegal payments to parties in interest and compensation.

***No Affirmative Defense Available to Defendants***

20.     Defendants' cannot sustain a prohibited transaction exemption under ERISA Section 408(b)(2) because they failed to disclose and actively concealed that the Customers' assets were generating Mutual Fund Fees. Defendants also failed to disclose and actively concealed that Defendants retained and paid to parties in interest many millions of dollars of Mutual Fund Fees.

21.     Disclosure is a key requirement for an affirmative defense under ERISA Section 408(b)(2). This disclosure requirement is rooted in the "reasonable compensation" requirement of ERISA Section 408(b)(2). 29 U.S.C. § 1008(b)(2) (only granting the prohibited transaction exception if compensation was reasonable). The DOL, acting pursuant to Congressional mandate and entitled to *Chevron* deference, has defined "reasonable compensation" to require, at a minimum, disclosure of compensation of any kind. 29 C.F.R. § 2550.408b-2(c)(1)(iv)(C). The requirement includes direct compensation, indirect compensation, any other kind of compensation, and expressly includes mutual fund fees and cash interest. *Id.*; DOL Field Assistance Bulletin No. 2002-03. Further, Defendants were required to provide these disclosures in writing. 29 C.F.R. § 2550.408b-2(c)(1)(iv); DOL Field Assistance Bulletin No. 2002-03.

22.     Custodians and service providers, like Defendants, must provide a direct written disclosure to their account holders of all compensation they will receive and pay to parties in interest. Those include Mutual Fund Fees. Custodians and service providers typically document

their disclosures by requiring the customer to sign a written receipt and saving it to the customer's account file.

23.     Until 2021, however, Defendants did no such thing. Defendants had a standard custodial account agreement they used for all customers that did not materially change until 2021 when Defendants underwent a complete overhaul of its account agreement and fee disclosure forms. Further, discovery is required to ascertain whether Defendants provided any similar disclosures to existing Customers in 2021, or if they only provided the revised form fee disclosures to new customers on a go forward basis.

24.     Starting on Matrix Trust's formation, Defendants' custodial account agreement did not mention Mutual Fund Fees whatsoever among its compensation terms, and Defendants never provided supplemental disclosures to their Customers regarding Mutual Fund Fees. Defendants used substantially the same custodial account agreement language for all Customers, putative class members, until 2021.

25.     ERISA and the DOL require all service providers and fiduciaries, including Defendants, to disclose at a minimum the following to Customers: (1) the services that will be provided; (2) a description of all direct compensation; (3) a description of all indirect compensation which includes disclosure of the (a) exact service that money will be received for; (b) the identification of the payer of the compensation; and (c) a description of the arrangement between the payer and the fiduciary or service provider; and (4) a description of all fees charged directly against the plan's investment and the amount charged, identification of the services for which the compensation will be received, and identification of the payers. 29 C.F.R. § 2550.408b-2(c)(1)(iv).

26.    Rather than following these disclosure requirements, Defendants opted for an atypical and error-prone 408(b)(2) approach. Rather than ensuring its own compliance with ERISA Section 408(b)(2) and the DOL's regulations thereunder, as is required, Defendants ignored the process and purported to delegate their responsibility to provide Defendants' customers 408(b)(2) notices to third party administrators. Defendants cannot, however, shift their obligations to third parties pursuant to ERISA. *See* 29 U.S.C. § 1110(a) ("any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part [ERISA] shall be void as against public policy"). Further, those third parties also failed to provide the required disclosures.

27.    The danger of Defendants' failure to provide disclosures in the account agreements and initial documents is exemplified in this case. As of the date of this filing, Plaintiffs are already aware of roughly 200 of Defendants' Customers who were falsely told 90% of the Mutual Fund Fees would be credited to the Customers' accounts. That is now known to be false, however, because Matrix instead paid the 90% to a party in interest in violation of numerous ERISA provisions.

28.    Similarly, Defendants' own disparate disclosure procedures highlight Defendants' failures. Defendants have two branch offices. Matrix Trust's Denver, Colorado office is its chief office and exercises custody over many times more assets than Matrix Trust's Phoenix, Arizona office. Defendants' Phoenix office, however, does much more to disclose its collection, retention and payment of Mutual Fund Fees via account statements, and likely others. Defendants' Denver

office, however, does no such thing. Its account statements are completely silent in regards to the Mutual Fund Fees.

***Concealment and Statute of Limitations***

29.    Plaintiffs affirmatively plead that the forgoing acts constitute concealment for purposes of the limitations period. See 29 U.S.C. § 1113 ("…except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.").

### III.    <u>CLASS ALLEGATIONS</u>

28.    Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the defined classes below.

29.    **<u>Numerosity of Classes:</u>** The members of the Classes are so numerous that joinder of all members is impractical. Defendants act as the custodian and affiliated service providers for the vast majority of as many as roughly more than 100,000 Customer benefit plans, all of whom could bring claims for these violations. Joining each plan and each participant is impractical and a waste of judicial resources.

30.    **<u>Existence of Predominance of Common Questions of Fact and Law:</u>** Moreover, numerous questions of law and fact are common to the Classes and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

    a.    Whether Defendants are a fiduciary of the Plan and Classes;

    b.    Whether Defendants entered into prohibited transactions under ERISA;

    c.    Whether Defendants met an exception under the prohibited transactions section of ERISA;

d.   Whether Defendants retained Mutual Fund Fees;

e.   Whether Defendants disclosed Mutual Fund Fees;

f.   If Defendants disclosed Mutual Fund Fees, was the disclosure adequate under ERISA;

g.   Whether Defendants breached their fiduciary duties under ERISA by engaging in the conduct described herein;

h.   Whether Defendants breached their fiduciary duties under state law by engaging in the conduct described herein;

i.   Whether Defendants were unjustly enriched for retaining the Mutual Fund Fees;

j.   Whether the Mutual Fund Fees were the property of the Classes for purposes of certain laws;

k.   Whether Defendants unjustly retained the property of the Classes;

l.   Whether Plaintiffs are entitled to equitable relief requiring Defendants to return the Mutual Fund Fees to their Customers;

m.  Whether any of Defendants' affirmative defenses apply;

n.   Whether Defendants' acted in concert in breaching their duties in retaining and paying the Mutual Fund Fees;

o.   Whether Defendants breached their duties by concealing the facts alleged herein;

p.   Whether Defendants concealed their breaches; and

q.   The amount of benefit Defendants gained by the retention of the Funds.

31.      **Typicality:** Plaintiffs' claims are typical of the members of each Class because they are all based on the Defendants' same nondisclosures, concealment, and retention of the same classes of Funds as Defendants retained for Plaintiffs. Defendants used the same form custodial

account documents for all members of each Class who executed it, but the documents did not provide the required disclosures. Defendants also maintain the custodial account documents in a Customer specific file in the same way for all members of each Class. Further, Defendants did not provide the required disclosures to the Class in any other way. Additionally, Defendants collected and retained Mutual Fund Fees and Cash Interest generated on Plaintiffs' assets in the exact same way as they did for all other putative class members.

32.    **Adequacy:** Plaintiffs will also fairly and adequately represent the Classes, and have retained counsel experienced and competent in the prosecution of ERISA litigation and class actions. Plaintiffs are represented by the same counsel that represents Plaintiffs in the similar class action in this District. Plaintiffs have no interests antagonistic to those of other members of the Classes. Plaintiffs are committed to the vigorous prosecution of this action, and anticipate no difficulty in the management of this litigation as a class action. Plaintiffs' counsel has also committed the resources to adequately represent the Classes.

33.    **Superiority:** This action may be properly certified under Federal Rule of Civil Procedure 23(b)(1). Class action status in this action is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Classes would create a risk of establishing incompatible standards of conduct for Defendants. Class action status is also warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Classes would create a risk of adjudications with respect to individual members of the Classes that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

34.    Alternatively, this action may also be properly certified under Rule 23(b)(2) because Defendants acted or refused to act on grounds generally applicable to the Classes, thereby

making final injunctive, declaratory, or other appropriate equitable relief applicable to the Classes as a whole.

35.     Additionally, this action can be properly certified under Rule 23(b)(3) because the questions of law or fact stated above that are common to all Class members predominate over any questions affecting only individual members and the class action is a superior method for fairly and effectively adjudicating the controversy.

### IV.     CLASS DEFINITIONS

39.     This class action should be certified pursuant to the following class definition (the "Class"):

> All Customers of Matrix's Denver Office which had assets in the custody of Matrix Trust that generated Mutual Fund Fees at any time prior to the date Notice is sent to the class members.

### V.     PARTIES

40.     Plaintiff MBA Engineering, Inc. ("MBA") is a corporation organized and existing under the laws of Minnesota, with its principal place of business in Shoreview, Minnesota. MBA is the Plans' Sponsor under ERISA 29 U.S.C. § 1002(16)(A), the Plans' Administrator under ERISA 29 U.S.C. § 1002(16)(A), and a fiduciary of the Plans under ERISA 29 U.S.C. §§ 1002(21)(A), 1102. As a fiduciary with respect to the Plans, MBA may bring this action against Defendants pursuant to ERISA. 29 U.S.C. §§ 1132(a)(2-3). Like all putative Class members, MBA had custodial accounts for each of the Plans with Defendants which produced Mutual Fund Fees and Cash Interest which Defendants retained.

41.     Plaintiff MBA Engineering, Inc. 401(k) Plan ("MBA 401(k) Plan") is a qualified plan under ERISA with legal status to sue in its own right. 29 U.S.C. § 1132(d). Like all putative

Class members, the MBA 401(k) Plan was a Customer of Defendants, and its assets generated Mutual Fund Fees and Cash Interest, all of which Defendants retained.

42.    Plaintiff MBA Engineering, Inc. Cash Balance Plan ("MBA Cash Plan") is a qualified plan under ERISA with legal status to sue in its own right. *Id.* Like all putative Class members, the MBA Cash Plan was a Customer of Defendants, and its assets generated Mutual Fund Fees and Cash Interest, all of which Defendants retained.

43.    Plaintiff Craig Meidinger is an individual. Mr. Meidinger is the owner of MBA, and Trustee of the Plans. As Trustee of the Plans, Mr. Meidinger is a fiduciary with respect to the Plans under ERISA 29 U.S.C. §§ 1002(14)(A), 1102. As a fiduciary with respect to the Plans, Mr. Meidinger may bring this action against Defendants pursuant to ERISA. 29 U.S.C. § 1132(a)(2–3).

44.    Defendant MSCS Financial Services Division of Broadridge Business Process Outsourcing, LLC ("MSCS Financial") is also owned by the same parent company as Matrix. MSCS Financial is incorporated under the laws of Delaware in or about 2001, with its principal place of business located at 717 17th Street, Suite 1300, Denver, Colorado 80202. Matrix contracted with MSCS Financial to perform services for the putative class members in securities transactions as Defendants' affiliated FINRA-member registered broker-dealer. MSCS Financial collected, retained, and exercised control over the Mutual Fund Fees at issue in this case without providing required disclosure. MSCS Financial is also a fiduciary to the Plans pursuant to ERISA 29 U.S.C. §§ 1002(21)(A), 1102(a)(1), 1103(a), because it, in fact, exercised authority and control over the management or disposition of the Plans' assets by retaining and paying the Mutual Fund Fees to parties in interest without disclosing them. MSCS Financial is also a service provider to the Plans and Class members as defined by the DOL because it entered into contracts with the

Plans or for the Plans to perform services and expected compensation of over $1,000. 29 C.F.R. § 2550.408b-2(c)(1)(iii).

45.     Defendant Matrix Trust Company is a bank incorporated under the laws of Delaware, with its principal place of business located at 717 17th Street, Suite 1300, Denver, Colorado 80202. Matrix is a fiduciary to the Plans pursuant to ERISA 29 U.S.C. §§ 1002(21)(A), 1102(a)(1), 1103(a), because it, in fact, exercised authority and control over the management or disposition of the Plans' assets. See also *Total Plan Servs., Inc. v. Texas Retailers Ass'n, Inc.*, 925 F.2d 142, 143 (5th Cir. 1991) (citing 29 U.S.C. § 1002(14)(A) and holding "All plan administrators, officers, trustees, and custodians are fiduciaries for purposes of ERISA."). Matrix "will, by definition, always be a fiduciary under ERISA as result of its authority or control over plan assets." Employee Benefits Security Administration, United States Department of Labor, Field Assistance Bull. No. 2004-03, Fiduciary Responsibilities of Directed Trustees (2004). Matrix is also a service provider to the Plans as defined by the DOL because it entered into contracts with the Plans or the TPA's of the Plans to perform services and expected compensation of over $1,000. 29 C.F.R. § 2550.408b-2(c)(1)(iii). Matrix exercised control over the Plans' and Class members' assets by depositing them in an account at a separate financial institution over which it had exclusive control, writing checks to be paid by the Plans' assets, directing wire transfers to be paid by the Plan's assets, and paying Mutual Fund Fees to parties in interest without disclosing it.

46.     Defendant Matrix Settlement & Clearance Services, LLC ("MSCS") is a wholly-owned subsidiary of the same parent company as Matrix. MSCS is incorporated under the laws of Delaware, with its principal place of business located at 717 17th Street, Suite 1300, Denver, Colorado 80202. MSCS performed certain "plan level" recordkeeping functions, and numerous customer service services for the putative class members. MSCS received compensation for its

services to the putative class members. MSCS provided customer service support functions to the Plans' and Class members which included handling contributions, disbursements, investments, addressing questions, and other actions. MSCS also developed software it licensed to Matrix to automate some of Defendants' customer service function. Matrix used that software for the Customers and all putative class members' accounts.

## VI.    <u>JURISDICTION</u>

47.    The Court has subject matter jurisdiction over this class action under 28 U.S.C. § 1332(d)(2) as the aggregate value of the case is over $5,000,000.00 and several members of the putative class are citizens of a different state from the Defendants.

48.    The Court has personal jurisdiction over Defendants because Defendants have sufficient minimum contacts with the United States and with Texas to satisfy due process. ERISA allows for broad nationwide service of process on defendants in any district where they reside or may be found. *Id.* When a federal statute allows for nationwide service of process, the minimum contacts inquiry turns to whether the defendant has minimum contacts with the United States. *Bush v. Buchman, Buchman & O'Brien Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994); *Leaf Trading Cards, LLC v. Upper Deck Co.*, No. 3:17-cv-03200-N, 2018 WL 2971135, at *1–2 (N.D. Tex. March 16, 2018); *Mba Eng'g, Inc. v. Vantage Benefits Adm'rs, Inc.*, No. 3:17-CV-3300-L (BK), 2019 WL 2539283, at *3 (N.D. Tex. March 5, 2019) *report and recommendation adopted in part and rejected in part* 2019 WL 3759277 (N.D. Tex. Aug. 9, 2019). Because Defendants are incorporated in Delaware and have their principal place of business in Colorado, Defendants have minimum contacts with the United States. *See Bush*, 11 F.3d at 1258; *Leaf Trading Cards*, 2018 WL 2971135, at *1–2. Moreover, Defendants do business in the state of Texas, including acting as the custodian for many Texas plans and hundreds of plans which

are/were administered in Texas. Defendants have also not opposed personal jurisdiction in other cases in this District. *See Mba Eng'g*, 2019 U.S. Dist. LEXIS 106209, at *8.

## VII.    <u>VENUE</u>

49.    Venue properly lies in the Northern District of Texas pursuant to 29 U.S.C. § 1132(e)(2) for two reasons. First, this district is where many of the Class's ERISA plans were administered. 29 U.S.C. § 1132(e)(2). Over 100 ERISA qualified plans and Class members were administered in the Northern District of Texas. *See* Def. Matrix's Answer and Counterclaims at ¶ 10, *Mba Eng'g, Inc. v. Vantage Benefits Adm'rs, Inc.*, No. 3:17-CV-3300-L (BK), (N.D. Tex. March 5, 2019) ("Matrix entered into Custodial Agreements with many of the more than 100 plans for which Vantage [a business located in the Northern District of Texas] acted as TPA").

50.    Second, for venue purposes, Defendants reside in this district. *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1210 n.3 (10th Cir. 2000). Where a defendant resides for ERISA venue purposes, is wherever a defendant is subject to personal jurisdiction. *Id.*; *Frost v. ReliOn, Inc.*, No. 3:06-CV-0822-GECF, 2007 WL 670550, at *5–6 (N.D. Tex. March 2, 2007). Therefore, because ERISA allows for personal jurisdiction over a defendant that maintains minimum contacts with the United States, Defendants reside in Texas and venue is proper. *Frost*, 2007 WL 670550, at *5–6.

51.    This District Court has also already determined this district to be a proper venue for other litigation between Plaintiffs and Matrix. *See Mba Eng'g*, 2019 U.S. Dist. LEXIS 106209, at *8.

## VIII.   CAUSES OF ACTION

### A.   COUNT I – ERISA PROHIBITED TRANSACTIONS

52.    Plaintiff incorporates and realleges each of the foregoing paragraphs as if fully set forth herein.

53.    ERISA § 406(a–b) provides, in relevant part, that:

> (a)(1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such a transaction constitutes a direct or indirect—
>
> . . . .
>
> (D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan. . .
>
> (b) A fiduciary with respect to a plan shall not—
>
>   (1) Deal with the assets of the plan in his own interest or for his own account, . . . or
>
>   . . .
>
>   (3) Receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

29 U.S.C. § 1106(a–b) ("Prohibited Transactions").

54.    ERISA § 409 makes a fiduciary who breaches any of the fiduciary responsibilities under ERISA, including entering into a prohibited transaction, liable to the Plans for any losses sustained by the Plans, for any profits the fiduciary received from the Plans' assets, and any other equitable or remedial relief. 29 U.S.C. § 1109. These Prohibited Transactions were made to provide courts bright line rules and per se violations of ERISA fiduciary duties. *Donovan v. Cunningham*, 716 F.2d 1455, 1465 (5th Cir. 1983).

55.    Fiduciary status under ERISA is to be construed liberally and is to be analyzed in light of the actions alleged. *Bannistor v. Ullman*, 287 F.3d 394, 401 (5th Cir. 2002). ERISA

provides that an entity is a fiduciary if it "functions" as a fiduciary. 29 U.S.C. § 1002(21)(A). An entity functions as a fiduciary if it "exercises *any* authority or control respecting management or disposition of its assets." *Id.* (emphasis added).

56.     At all relevant times, Defendants were fiduciaries with respect to the Class. *Total Plan Servs., Inc. v. Texas Retailers Ass'n, Inc.*, 925 F.2d 142, 143 (5th Cir. 1991) (holding "All plan administrators, officers, trustees, and custodians are fiduciaries for purposes of ERISA" and citing 29 U.S.C. § 1002(14)(A)).

57.     The Mutual Fund Fees were held in accounts operated by Defendants, either wholly owned by Matrix, MSCS Financial, or through the information, data, and systems developed and provided by MSCS. Each of the Class assets generated the Funds that Defendants exercised their control to collect, retain, and transfer to parties in interest. Additionally, under general property principals, interest and fees generated from assets are the property of the owners of the underlying assets absent an agreement to the contrary; therefore, the Mutual Fund Fees generated by the putative class members' assets remain the property of the Class. Because Defendants were therefore without any authority to retain and transfer the Mutual Fund Fees. Defendants' actions constitute actual authority and control over the management and disposition of the Class assets— making Defendants functioning fiduciaries. Defendants committed these actions in concert and coordination as stated in ¶¶ 13–19.

58.     Defendants entered into three (3) types of Prohibited Transactions by retaining and transferring the Mutual Fund Fees. *See* 29 U.S.C. § 1106(a-b). First, under ERISA § 406(a)(1)(D), a fiduciary is liable if it causes the direct or indirect transfer to, use by, or for the benefit of a party in interest of the plan assets. 29 U.S.C. § 1106(a)(1)(D). ERISA defines a "party in interest" as a fiduciary of a plan, a service provider of the plan, or a third party administrator. 29 U.S.C.

§ 1002(21)(a-b). Defendants in this case, as stated above, were functional fiduciaries and service providers because they provided custodial services to each Class member. Defendants either retained the Mutual Fund Fees in their sole accounts via MSCS Financial or Matrix; paid out the Mutual Fund Fees to parties in interest through the systems and data provided by MSCS by MSCS Financial or Matrix; or received the benefit of the improperly retained, or transferred funds in providing the service to the Class. Moreover, because the Mutual Fund Fees belonged to the putative class members, retaining and transferring the funds for the benefit of Defendants and parties in interest constituted prohibited transactions. Therefore, Defendants are liable to the Class for all of the Mutual Fund Fees they retained and paid to parties in interest.

59.    Second, under ERISA § 406(b)(1), a fiduciary is prohibited from dealing with plan assets in its own interest. 29 U.S.C. § 1106(b)(1). By retaining the Funds or paying them to parties in interest, Defendants have kept the plan assets for themselves or exercised their own judgment as to their disposition. Because Defendants are fiduciaries and service providers to the Class members, Defendants entered into a prohibited transaction by dealing with the Mutual Fund Fees in their own interest. Further, Defendants were never authorized to make these prohibited transactions.

60.    Third, under ERISA § 406(b)(3), a fiduciary is prohibited from receiving for itself any consideration from any party dealing with the plan from a transaction involving the assets of the plan. 29 U.S.C. § 1106(b)(3). Here, third parties paid Defendants the Mutual Fund Fees that were generated from Customer assets. Defendants then retained a portion of the Mutual Fund Fees for themselves or received the financial benefit of providing the services and retention of the fees by the other Defendants. Because of this, Defendants received consideration for transactions involving plan assets—a prohibited transaction. Similarly, Defendants' payment of more than 90%

of the Mutual Fund Fees to the third party administrators was a component of agreements between Defendants and the third party administrators. As such, Defendants also received consideration for themselves from the third party administrators from transactions involving Customer assets.

61.    Defendants have the burden to establish, and cannot establish, that they meet an exemption from ERISA's Prohibited Transaction section. They cannot do so because they did not disclose the collection, retention, and payment of the Mutual Fund Fees. ERISA § 408(b) removes certain transactions from the Prohibited Transaction list in § 406. 29 U.S.C. § 1108(b). The only potential exemption that could allow Defendants to retain or pay the Mutual Fund Fees is ERISA § 408(b)(2). 29 U.S.C. § 1108(b)(2). This section allows a fiduciary to enter into a contract with a party in interest for services for the plan if no more than reasonable compensation is paid. *Id.*

62.    However, undisclosed compensation is per se not reasonable. Compensation will only be deemed reasonable if the fiduciary provides strict disclosures of the compensation. In 2012, the Department of Labor ("DOL"), pursuant to Congressional delegation and *Chevron* deference, determined that no compensation is reasonable if it is not disclosed to the ERISA plan. 29 C.F.R. § 2550.408b-2(c)(1)(i) ("No contract or arrangement for services between a covered plan and a covered service provider . . . is reasonable within the meaning of Section 408(b)(2) of the Act . . . unless the [disclosure] requirements of this paragraph (c)(1) are satisfied."). Compensation covered by this regulation includes Mutual Fund Fees. *See* 29 C.F.R. § 2550.408b-2(c)(1)(i).

63.    Here, Defendants failed to make any disclosures of the Funds they collected. This includes Defendants' failure to follow the Department of Labor's requirements. Therefore, Defendants are liable to the Class for all of the Mutual Fund Fees retained as well as any profits that were generated therefrom.

### B.    COUNT II – BREACH OF FIDUCIARY DUTY - ERISA

64.    Plaintiffs incorporate and reallege each of the foregoing paragraphs as if fully set forth herein.

65.    As described above, the Class assets in Defendants' custody generated the Mutual Fund Fees that Defendants in their sole control collected, retained, and transferred to parties in interest. Because Defendants lacked any authority to retain or transfer the Mutual Fund Fees, Defendants' actions constitute actual authority and control over the management and disposition of the Class assets, making Defendants functioning fiduciaries under ERISA. 29 U.S.C. § 1002(21)(A).

66.    Defendants breached their fiduciary duties under ERISA to act solely for the benefit of the Plans and to act with the "care, skill, prudence, and diligence" ERISA requires by retaining and transferring the Mutual Fund Fees without adequately disclosing it and obtaining the putative class members' assent. 29 U.S.C. § 1104(a)(1).

67.    Defendants also failed to act solely in the interest of the participants and beneficiaries of the Customers' plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA. *Id.*

68.    By retaining the Mutual Fund Fees, Defendants acted against the best interest of the Plans by receiving compensation that was never disclosed or contemplated by the Customers. As fiduciaries, Defendants had an obligation to disclose and obtain their Customers assent to retain and pay the Mutual Fund Fees to parties in interest.

69.    By failing to disclose the Mutual Fund Fees Defendants collected, retained and paid to parties in interest, Defendants breached their fiduciary duties causing the Class to lose many

millions of dollars. Defendants are liable to the Class under ERISA for all harm the Class has suffered as a result of Defendants' breaches. Defendants committed these actions in concert and coordination as stated in their various roles and functions as custodians and service providers for the Plans in ¶¶ 13–19.

70.    As fiduciaries, Defendants may not disclaim any responsibilities under ERISA. 29 U.S.C. § 1110. Accordingly, any provision of any agreement or other document which Defendants may contend relieves it of or limits its responsibility is invalid.

### C.    COUNT III – EQUITABLE RELIEF UNDER ERISA

71.    Plaintiff incorporates and realleges each of the foregoing paragraphs as if fully set forth herein.

72.    Alternatively even if any Defendants were not a fiduciary, an ERISA plan or fiduciary may seek restitution and other equitable relief from non-fiduciary parties in interest to prohibited transactions. 29 U.S.C. §§ 1106, 1132(a)(3); *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000); *Perez*, 823 F.3d at 272–75. If a non-fiduciary receives plan assets in violation of the prohibited transaction provision, the non-fiduciary will then be required to restore the plan assets to the plan and disgorge any profits derived from the plan assets. *Salomon*, 530 U.S. at 250.

73.    A party in interest includes somebody that provides services to an ERISA plan. 29 U.S.C. § 1002(14)(B). A service provider includes a custodian of plan assets who receives compensation for its services. 29 C.F.R. § 2550.408b-2(c)(1)(iii)(C).

74.    Defendants are service providers to each of the Class plans as they provided services to the putative class members. As service providers, Defendants are parties in interest to

prohibited transactions. Defendants committed these actions in concert and coordination as stated in their various roles and functions as custodians and service providers for the Plans in ¶¶ 13–19.

75.     Non-fiduciary service providers, like fiduciaries, may not retain compensation without disclosing it to the applicable plan. 29 C.F.R. § 2550.408b-2(c)(1)(i) ("The requirements of this paragraph (c)(1) are independent of fiduciary obligations under section 404 of the Act."); DOL Field Assistance Bulletin No. 2002-03. Failure to disclose the compensation constitutes a prohibited transaction. 29 C.F.R. § 2550.408b-2(c)(1)(i); DOL Field Assistance Bulletin No. 2002-03.

76.     As stated above, Defendants retained or disposed of the Funds without disclosing that information to Plaintiffs or the Class. Because Defendants were service providers and failed to comply with ERISA disclosure requirements, the Class is entitled to all Mutual Fund Fees retained by Defendants as well as the profits earned therefrom.

**D.     COUNT IV – AIDING AND ABETTING BREACH OF FIDUCIARY DUTY – ERISA
(Against Defendants MSCS and Matrix)**

77.     Plaintiffs incorporate and reallege each of the foregoing paragraphs as if fully set forth herein.

78.     MSCS Financial owed the Plans fidicuary duties under ERISA as explained above.

79.     MSCS Financial breached its fiduciary duties under ERISA to act solely for the benefit of the Plans and to act with the "care, skill, prudence, and diligence" ERISA requires by retaining and transferring the Mutual Fund Fees without adequately disclosing it and obtaining the putative class members' assent. 29 U.S.C. § 1104(a)(1).

80.     MSCS Financial also failed to act solely in the interest of the participants and beneficiaries of the Customers' plans and for the exclusive purpose of providing benefits to

participants and their beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA. *Id.*

81.    By retaining the Mutual Fund Fees, MSCS Financial acted against the best interest of the Plans by receiving compensation that was never disclosed or contemplated by the Customers.  As a fiduciary, MSCS Financial had an obligation to disclose and obtain their Customers assent to retain and pay the Mutual Fund Fees to parties in interest.

82.    By failing to disclose the Mutual Fund Fees MSCS Financial collected, retained and paid to parties in interest, MSCS Financial breached its fiduciary duties causing the Class to lose many millions of dollars.

83.    MSCS and Matrix knowingly aided and participated in MSCS Financial's breaches of its fiduciary duties to the Plans. MSCS provided the technology and data that assisted MSCS Financial in retaining and collecting the Mutual Fund Fees knowing that the retention of those funds constitute a prohibited transaction and breach of fiduciary duty.

84.    Matrix knew that MSCS Financial was acting as a fiduciary and was breaching its duties by assisting MSCS Financial in retaining, collecting, concealing, and improperly disbursing the Mutual Fund Fees to parties in interest including itself.

85.    MSCS and Matrix's actions caused substantial harm and damage to the Plans as it caused the Plans to lose millions of dollars in Mutual Fund Fees. Thus, MSCS and Matrix are liable to the Plans for the damages caused to the Plans including the Mutual Fund Fees and the profits earned on those funds.

E.    COUNT V – AIDING AND ABETTING BREACH OF FIDUCIARY DUTY – ERISA
        (Against Defendants MSCS and MSCS Financial)

86.    Plaintiffs incorporate and reallege each of the foregoing paragraphs as if fully set forth herein.

87.     Matrix owed the Plans fiduciary duties under ERISA as explained above.

88.     Matrix breached its fiduciary duties under ERISA to act solely for the benefit of the Plans and to act with the "care, skill, prudence, and diligence" ERISA requires by retaining and transferring the Mutual Fund Fees without adequately disclosing it and obtaining the putative class members' assent. 29 U.S.C. § 1104(a)(1).

89.     Matrix also failed to act solely in the interest of the participants and beneficiaries of the Customers' plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA. *Id.*

90.     By retaining the Mutual Fund Fees, Matrix acted against the best interest of the Plans by receiving compensation that was never disclosed or contemplated by the Customers.  As a fiduciary, Matrix had an obligation to disclose and obtain their Customers assent to retain and pay the Mutual Fund Fees to parties in interest.

91.     By failing to disclose the Mutual Fund Fees Matrix collected, retained and paid to parties in interest, Matrix breached its fiduciary duties causing the Class to lose many millions of dollars.

92.     MSCS and MSCS Financial knowingly aided and participated in Matrix's breaches of its fiduciary duties to the Plans. MSCS provided the technology and data that assisted Matrix in retaining and collecting the Mutual Fund Fees knowing that the retention of those funds constitute a prohibited transaction and breach of fiduciary duty.

93.     MSCS Financial knew that Matrix was acting as a fiduciary and was breaching its duties by assisting Matrix in retaining, collecting, concealing, and improperly disbursing the Mutual Fund Fees to parties in interest including itself.

94.    MSCS and MSCS Financial's actions caused substantial harm and damage to the Plans as it caused the Plans to lose millions of dollars in Mutual Fund Fees. Thus, MSCS and MSCS Financial are liable to the Plans for the damages caused to the Plans including the Mutual Fund Fees and the profits earned on those funds. *See* 29 U.S.C. § 1104.

### F.  COUNT VI – STATE LAW BREACH OF FIDUCIARY DUTY

95.    Plaintiffs incorporate and reallege each of the foregoing paragraphs as if fully set forth herein.

96.    For those putative class members which were not governed by ERISA, Defendants have also breached their state law fiduciary duties.

97.    Defendants are fiduciaries to the putative class members which were not governed by ERISA pursuant to statute. *See* Colo. Rev. Stat. §§ 15-1-507, 15-1-509, 15-1-510. Specifically, Defendants all work in concert to perform the functions of a Colorado trust company acting as a custodian. Each Defendants' various roles and functions as custodians and service providers for the Plans are described more fully in ¶¶ 13–19. Because of this, Defendants are deemed fiduciaries. *Id.* § 15-1-507.

98.    Under statute, Defendants owed the putative class members not governed by ERISA a duty to act reasonably and equitably with due regard to their obligations and responsibilities toward the interests of the beneficiaries.

99.    The property held by Defendants was fiduciary property. *Id.* Under general property law, all interest or fees generated from the principal remains the property of the principal. Because the Class assets generated the Funds, the Funds were also Class assets. By retaining the Funds for themselves, disposing of them, receiving benefits from the Funds, and coordinating in the

disposing and retention of the Funds, Defendants violated their fiduciary duty to the Class members.

100.    Moreover, Defendants were fiduciaries under common law agency principles. Defendants were agents of the Class. Specifically, the agreements between the parties expressly provide for the agency relationship. As agents, Defendants were fiduciaries.

101.    As agents, Defendants owed the putative class members not subject to ERISA multiple fiduciary duties under state law. Those duties included: (1) to act with care, competence, and diligence normally exercised by agents in similar circumstances; (2) to take action only within the scope of actual authority; (3) to act reasonably and refrain from conduct likely to damage the Non-ERISA Class Members; (4) to use reasonable efforts to notify the Non-ERISA Class Members of material facts Defendants knew, had reason to know, or should have known; (5) to act loyally to the Non-ERISA Class Member's benefit; and (6) to act in accordance with the express and implied terms of the agency agreement.

102.    Defendants breached each one of these duties by retaining the Mutual Fund Fees and paying them to third party administrators. Moreover, Defendants knew that they were retaining and paying the third party administrators the Mutual Fund Fees generated by the putative class members' assets and never attempted to notify the Class.

103.    As a result of these breaches, the putative class members not subject to ERISA suffered harm by losing the value of the Mutual Fund Fees and the earnings that would have been generated therefrom. Defendants are liable for all harm that the putative class members have suffered as a result of Defendants' breaches.

104.    Defendants' breaches also constitute willful and wanton conduct because they purposefully retained the Funds that belonged to the Class. Accordingly, the Class is entitled to exemplary damages. Colo. Rev. Stat. § 13-21-102.

G.    COUNT VII – AIDING AND ABETTING BREACH OF FIDUCIARY DUTY – STATE LAW
(Against Defendants MSCS and Matrix)

105.    Plaintiffs incorporate and reallege each of the foregoing paragraphs as if fully set forth herein.

106.    For those putative class members which were not governed by ERISA, MSCS and Matrix have also aided and abetted MSCS Financial's breach of its fiduciary duties under state law.

107.    MSCS Financial is a fiduciary to the putative class members which were not governed by ERISA pursuant to statute. *See* Colo. Rev. Stat. §§ 15-1-507, 15-1-509, 15-1-510. Specifically, MSCS Financial works in concert with MSCS and Matrix to perform the functions of a Colorado trust company acting as a custodian. Because of this, MSCS Financial is deemed a fiduciary. *Id.* § 15-1-507.

108.    Under statute, MSCS Financial owed the putative class members not governed by ERISA a duty to act reasonably and equitably with due regard to their obligations and responsibilities toward the interests of the beneficiaries.

109.    The property held by MSCS Financial was fiduciary property. *Id.* Under general property law, all interest or fees generated from the principal remains the property of the principal. Because the Class assets generated the Funds, the Funds were also Class assets. By retaining the Funds for themselves, disposing of them, receiving benefits from the Funds, and coordinating in the disposing and retention of the Funds, MSCS Financial violated their fiduciary duty to the Class members.

110.    Moreover, MSCS Financial was a fiduciary under common law agency principles. Defendants were agents of the Class. Specifically, the agreements between the parties expressly provide for the agency relationship. As an agent, MSCS Financial was a fiduciary.

111.    As an agent, MSCS Financial owed the putative class members not subject to ERISA multiple fiduciary duties under state law. Those duties included: (1) to act with care, competence, and diligence normally exercised by agents in similar circumstances; (2) to take action only within the scope of actual authority; (3) to act reasonably and refrain from conduct likely to damage the Non-ERISA Class Members; (4) to use reasonable efforts to notify the Non-ERISA Class Members of material facts Defendants knew, had reason to know, or should have known; (5) to act loyally to the Non-ERISA Class Member's benefit; and (6) to act in accordance with the express and implied terms of the agency agreement.

112.    MSCS Financial breached each one of these duties by retaining the Mutual Fund Fees and paying them to third party administrators and parties in interest. Moreover, MSCS Financial knew that they were retaining and paying the third party administrators the Mutual Fund Fees generated by the putative class members' assets and never attempted to notify the Class.

113.    MSCS and Matrix knowingly aided and participated in MSCS Financial's breaches of its fiduciary duties to the Plans. MSCS provided the technology and data that assisted MSCS Financial in retaining and collecting the Mutual Fund Fees knowing that MSCS Financial's actions were in breach of its fiduciary duties.

114.    Matrix knew that MSCS Financial was acting as a fiduciary and was breaching its duties by assisting MSCS Financial in retaining, collecting, concealing, and improperly disbursing the Mutual Fund Fees to parties in interest including itself.

115.    MSCS and Matrix's actions caused substantial harm and damage to the Plans as it caused the Plans to lose millions of dollars in Mutual Fund Fees. Thus, MSCS and Matrix are liable to the Plans for the damages caused to the Plans including the Mutual Fund Fees and the profits earned on those funds.

## H.    COUNT VIII – AIDING AND ABETTING BREACH OF FIDUCIARY DUTY – STATE LAW (Against Defendants MSCS and MSCS Financial)

116.    Plaintiffs incorporate and reallege each of the foregoing paragraphs as if fully set forth herein.

117.    For those putative class members which were not governed by ERISA, MSCS and MSCS Financial have also aided and abetted Matrix's breach of its fiduciary duties under state law.

118.    Matrix is a fiduciary to the putative class members which were not governed by ERISA pursuant to statute. *See* Colo. Rev. Stat. §§ 15-1-507, 15-1-509, 15-1-510. Specifically, Matrix works in concert with MSCS and MSCS Financial to perform the functions of a Colorado trust company acting as a custodian. Because of this, Matrix is deemed a fiduciary. *Id.* § 15-1-507.

119.    Under statute, Matrix owed the putative class members not governed by ERISA a duty to act reasonably and equitably with due regard to their obligations and responsibilities toward the interests of the beneficiaries.

120.    The property held by Matrix was fiduciary property. *Id.* Under general property law, all interest or fees generated from the principal remains the property of the principal. Because the Class assets generated the Funds, the Funds were also Class assets. By retaining the Funds for themselves, disposing of them, receiving benefits from the Funds, and coordinating in the disposing and retention of the Funds, Matrix violated their fiduciary duty to the Class members.

121.    Moreover, Matrix was a fiduciary under common law agency principles. Defendants were agents of the Class. Specifically, the agreements between the parties expressly provide for the agency relationship. As an agent, Matrix was a fiduciary.

122.    As an agent, Matrix owed the putative class members not subject to ERISA multiple fiduciary duties under state law. Those duties included: (1) to act with care, competence, and diligence normally exercised by agents in similar circumstances; (2) to take action only within the scope of actual authority; (3) to act reasonably and refrain from conduct likely to damage the Non-ERISA Class Members; (4) to use reasonable efforts to notify the Non-ERISA Class Members of material facts Defendants knew, had reason to know, or should have known; (5) to act loyally to the Non-ERISA Class Member's benefit; and (6) to act in accordance with the express and implied terms of the agency agreement.

123.    Matrix breached each one of these duties by retaining the Mutual Fund Fees and paying them to third party administrators and parties in interest. Moreover, Matrix knew that they were retaining and paying the third party administrators the Mutual Fund Fees generated by the putative class members' assets and never attempted to notify the Class.

124.    MSCS and MSCS Financial knowingly aided and participated in Matrix's breaches of its fiduciary duties to the Plans. MSCS provided the technology and data that assisted Matrix in retaining and collecting the Mutual Fund Fees knowing that Matrix's actions were in breach of its fiduciary duties.

125.    MSCS Financial knew that Matrix was acting as a fiduciary and was breaching its duties by assisting Matrix in retaining, collecting, concealing, and improperly disbursing the Mutual Fund Fees to parties in interest including itself.

126.    MSCS and MSCS Financial's actions caused substantial harm and damage to the Plans as it caused the Plans to lose millions of dollars in Mutual Fund Fees. Thus, MSCS and MSCS Financial are liable to the Plans for the damages caused to the Plans including the Mutual Fund Fees and the profits earned on those funds.

## I.    COUNT IX – UNJUST ENRICHMENT

127.    Plaintiffs incorporate and reallege each of the foregoing paragraphs as if fully set forth herein.

128.    Plaintiffs bring this claim on behalf of all putative class members which were not subject to ERISA. Plaintiffs also bring this claim on behalf of all putative class members which were subject to ERISA, in the alternative event the Court does not find that Defendants were fiduciaries. *See Smith v. Provident Bank*, 170 F.3d 609, 616–17 (6th Cir. 1999); *Sky Toxicology, Ltd. v. United Healthcare Ins., Co.*, 5-16-cv-01094-FB-RBF, 2018 U.S. Dist. LEXIS 150245, at *14–17 (W.D. Tex. Sept. 4, 2018); *Kersh v. United Healthcare Ins., Co*, 946 F. Supp. 2d 621, 638–39 (W.D. Tex. 2013).

129.    Unjust enrichment is a state common law remedy that occurs when a person has wrongfully secured a benefit or passively received one which would be unconscionable to retain. *See Scott v. Scott*, 428 P.3d 626, 636 (Colo. Ct. App. 2018); *Eun Bok Lee v. Ho Chang Lee*, 411 S.W.3d 95, 111 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

130.    Under general and long-standing common law principles, interest and fees belong to the owner of the principal asset whereby they were generated. Here, the Customers' assets generated the Mutual Fund Fees. Therefore, based on property law, the putative class members own the Mutual Fund Fees.

131.    However, Defendants retained Mutual Fund Fees. By retaining them, Defendants deprived the putative class members of their rightful property. It would therefore be unjust to allow the Defendants to retain possession of the Mutual Fund Fees.

### J.    COUNT VI – CONVERSION

132.    Plaintiffs incorporate and reallege each of the foregoing paragraphs as if fully set forth herein.

133.    Plaintiffs bring this claim on behalf of all putative class members which were not subject to ERISA. Plaintiffs also bring this claim on behalf of all putative class members which were subject to ERISA, in the alternative event the Court does not find that Defendants were fiduciaries. *See Smith*, 170 F.3d at 616–17; *Sky Toxicology,* 2018 U.S. Dist. LEXIS 150245, at *14–15; *Kersh*, 946 F. Supp. 2d at 638–39.

134.    Defendants wrongfully exercised dominion and control over property belonging to the putative class members. The Mutual Fund Fees were the property of the Class under general property rules and Defendants' actions permanently deprived the putative class members of the Mutual Fund Fees wrongfully and without authorization to do so.

### K.    COUNT VII – MONEY HAD & RECEIVED

135.    Plaintiffs incorporate and reallege each of the foregoing paragraphs as if fully set forth herein.

136.    Plaintiffs bring this claim on behalf of all putative class members which were not subject to ERISA. Plaintiffs also bring this claim on behalf of all putative class members which were subject to ERISA, in the alternative event the Court does not find that Defendants were

fiduciaries. *See Smith*, 170 F.3d at 616–17; *Sky Toxicology,* 2018 U.S. Dist. LEXIS 150245, at *14–15; *Kersh*, 946 F. Supp. 2d at 638–39.

137.    Defendants hold money that, in equity and good conscience, belongs to the putative class members. Specifically, the Mutual Fund Fees under general property law belonged to the putative class members. Defendants had no authority to retain them and never disclosed as much.

138.    Therefore, in good conscience, the Plaintiffs are entitled to restitution of the Funds that Defendants retained from Class assets.

## IX.    JURY DEMAND

139.    Plaintiffs hereby demand, individually and on behalf of the Class members a trial by jury.

## X.    DAMAGES

WHEREFORE, Plaintiffs, on behalf of themselves and as representative of all others similarly situated, respectfully requests that this Court enter judgment as follows:

a.    Declaring that this action is properly maintainable as a class action;

b.    Certifying the Class according to the definitions above;

c.    Naming Plaintiffs' Counsel as Class Counsel;

d.    Naming Plaintiffs as Class Representatives;

e.    Awarding the Class the amount of Mutual Fund fees collected by Defendants and the profits generated by those Funds to put Plans in the position they would have been in but for Defendants' improper actions;

f.    Attorney's fees and other costs of court;

g.    Pre- and post-judgment interest; and

h.    Such other and further relief as this Court may deem just and proper.

Respectfully submitted,

MCCATHERN, PLLC

*/s/Justin N. Bryan*
Arnold Shokouhi
State Bar No. 24056315
arnolds@mccathernlaw.com
Justin N. Bryan
State Bar No. 24072006
jbryan@mccathernlaw.com
D. Aaron Dekle
State Bar No. 24100961
adekle@mccathernlaw.com
3710 Rawlins Street, Suite 1600
Dallas, Texas 75219
Telephone: (214) 741-2662
Facsimile: (214) 741-1741

Evan Selik
*PRO HAC VICE APPLICATION FORTHCOMING*
California Bar No. 251039
eselik@mccathernlaw.com
523 West Sixth Street, Suite 830
Los Angeles, California 90014
Telephone: (213) 225-6150
Facsimile: (213) 225-6151

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I, the undersigned attorney, hereby certify that a true and correct copy of the foregoing was served on all counsel of record through the Court's CM/ECF system on June 3, 2022.

/s/*Justin N. Bryan*
Justin N. Bryan